THE CARTHAGE NATIONAL BANK v. SAMUEL H. BUTTER-
BAUGH, *et al.,* Appellants.

**Authority to Make Signature:** EVIDENCE. One witness testified that
decedent's son seemed to look after decedent's affairs, and his
sister testified that he had a general power of attorney, but
no such power was shown. She also testified that he signed de-
cedent's name indiscriminately, but no specific instance was
shown. *Held,* insufficient to show that decedent authorized her
son to sign the notes for her.

RATIFICATION. After the delivery of the notes to plaintiff, de-
fendant wrote him respecting payments on decedent's notes;
in one letter stating that he trusted plaintiff would not annoy
decedent, as there was some crookedness about obtaining the
money on the part of her son, and that decedent was anxious
that the matter be fixed up. Plaintiff also received a letter
from a third person in reply to one written decedent, stating
that decedent requested the writer to say she was sorry she
could not pay the note at the time, and that plaintiff would
have to rely on the collateral. A daughter of decedent testi-
fied that decedent knew that the note was held by plaintiff
as collateral for another, etc. *Held,* insufficient to show ratifi-
cation of the signature by decedent.

**Genuineness of Signature:** BURDEN OF PROOF. Code, section 3640,
provides that when a written instrument is referred to in a
pleading, and is incorporated in or attached thereto, the signa-
ture and any indorsement shall be deemed admitted, unless
the person whose signature it purports to be shall deny its
genuineness under oath; that, if such instrument is not nego-
tiable, and purports to be executed by a person not a party,
the signature shall not be deemed admitted if a party states
under oath that he has no sufficient knowledge to form a
belief as to its genuineness. *Held,* in a suit on a note and to
foreclose a mortgage securing it, executed by defendant to
decedent, and alleged to have been assigned by decedent to
plaintiff as security for decedent's personal note, and denying
the genuineness of her indorsement of the other, the burden
is on plaintiff to prove that decedent wrote her signatures
thereto, or authorized or ratified the writing thereof.

EVIDENCE. Decedent's son delivered to plaintiff a note purporting
to be signed by himself and his mother, and as security there-

for another note, executed by defendant to decedent, and purporting to be indorsed by her to plaintiff. No witness testified to seeing her sign either note, nor that the signatures were in her handwriting, and a number did testify from their knowledge of the handwriting that she did not write the signatures. *Held* insufficient to show that decedent signed the notes.

*Appeal from Cerro Gordo District Court.*—HON. JOHN C. SHERWIN, Judge.

TUESDAY, JANUARY 28, 1902.

PLAINTIFF alleges as its cause of action in substance as follows: That on August 15, 1892, the defendant. Samuel H. Butterbaugh, executed and delivered his promissory note to Parmelia Giddings for $511.25, due five years after date, with 8 per cent. interest and attorney's fees, and his mortgage on his undivided one-third interest in certain real estate described to secure the same. That on the sixth day of February, 1898, said Parmelia Giddings, "together with her son, Volney Giddings, for a valuable consideration, executed and delivered to the plaintiff herein their promissory note in writing for $550, which note was made due and payable on or before the sixth day of May, 1896." That "Parmelia Giddings, for the purpose of securing the prompt payment of said note for $550 to plaintiff herein, duly assigned and transferred to plaintiff the note and mortgage hereinabove referred to and set out, respectively. as Exhibits A and B, by writing on the back of said note her name as follows, 'Parmelia Giddings;' and said note and mortgage became and still is the property of plaintiff herein, and is now owned and held by plaintiff herein." That said $550 note is due, and wholly unpaid. and that by the terms of said $511.25 note and said mortgage the failure to pay interest within ten days after due rendered the whole debt due, and that the maker failed to pay the interest due August 15, 1897. That the defendants, Samuel H. Butterbaugh, C. H. McNider, Anna M.

Bott, John M. Bott, Lucia G. Butterbaugh, Meda C. Paine (formerly Butterbaugh), Ethel D. Shipley (formerly Butterbaugh), Fannie G. Butterbaugh, Anna May Bott, and Lenora Hall claim some right in the mortgaged premises, but that their interest, if any, is junior to plaintiff's. Plaintiff asked judgment against Samuel H. Butterbaugh on said $511.25 note, and foreclosure of said mortgage. The defendants, Samuel H., Lucia G. Butterbaugh, Fannie G. Butterbaugh, Meda C. Paine and Ethel D. Shipley answered, denying that Parmelia Giddings, together with Volney Giddings, executed and delivered to plaintiff said $550 note, and denying "that the signature to the assignment and indorsement on the back of the note referred to in paragraph six is the genuine signature of said Parmelia Giddings," and denying that said note is the property of the plaintiff herein or lawfully owned or held by it. As a further defense they alleged that said $511.25 note and mortgage were continuously owned by Parmelia Giddings, until her death, June 18, 1897; that, by her will, which was duly probated, she provided that said note "be delivered to the said Butterbaugh without any consideration. I desire him to have that back, and I hereby direct that my executrix deliver said note to him, and that it be not counted part of the assets at my death." Defendants say that Catherine Chapman, executrix of said will, is entitled to said note and mortgage that the same may be surrendered to Samuel H. Butterbaugh. Plaintiff replied, denying that Parmelia Giddings continuously owned said note and mortgage, and denying that the executrix is entitled to possession thereof. Judgment and decree were rendered in favor of the plaintiff as prayed, and the defendants who answered appeal.—*Reversed.*

*Stanberry & Clark* for appellants.

*Glass & McConlogue* for appellee.

GIVEN, C. J.—I.   There is no question but that Volney Giddings, for a valuable consideration, delivered to the plain-

tiff said $550 note purporting to be signed by himself and his mother, Parmelia Giddings, and at the same time, and as security therefor, delivered to the plaintiff said other note purporting to be indorsed by Parmelia Giddings, together with said mortgage. The controlling question of fact is whether Parmelia Giddings signed or authorized or ratified the signing of her name to said $550 note, and whether she indorsed said other note. Under the denials in the verified answer the burden is upon the plaintiff to show that Parmelia Giddings wrote said signatures, or authorized or ratified the writing thereof. Code, section 3640. These notes were presented to the plaintiff by Volney Giddings with the signatures thereto and thereon, as now appear. No witness testifies to seeing Mrs. Giddings write either of the names, nor that either is in her handwriting; while a number of competent witnesses, speaking from a knowledge of her handwriting, and from comparison with her genuine signature, say that she did not write these disputed signatures. There is an entire absence of evidence that Mrs. Giddings signed the $550 note, or that she indorsed the $511.25 note with her own hand. Question is made whether, under the allegations of the petition, the plaintiff may prove authority from Mrs. Giddings to another to write these signatures for her, or that after full knowledge thereof she ratified the writing of said signatures. In the view we take of the case we need not determine this question. The only evidence tending to show authority to another to write these signatures for her is to her son Volney, but there is no evidence that the signatures are in his handwriting, nor sufficient evidence to show that he had authority to write them. At the time these instruments purported to have been signed by Mrs. Giddings she and her son were keeping house together, and one witness says, "Volney seemed to look after her affairs, and to transact all her business, so far as I know." Mrs. Sherwood, a sister of Volney, says, in response to the question

as to his authority, "He had the general power of attorney;" but no such power of attorney is shown. The same witness says, "I know Volney Giddings signed his mother's name indiscriminately in her business affairs" without objection from her, but no instance is shown in which Volney Giddings signed the name of his mother. This is substantially all the evidence offered by plaintiff to show authority. We have no doubt from this and other testimony that Volney did look after affairs for his mother, but did not to the extent of executing obligations in writing for her. On one occasion Mrs. Giddings made a loan of money to one of her daughters, and gave the check therefor to Volney, and he drew the money, and gave it to his sister. It also appears that he sometimes looked after collecting notes held by his mother, and interest thereon; but, as we have said, it does not appear that on any occasion prior to this transaction he signed the name of his mother. There is evidence that Mrs. Giddings said on several occasions that she had not authorized the signing or indorsement of said notes, but, aside from this evidence, we reach the conclusion that the plaintiff has failed to show that Mrs. Giddings authorized the writing of these disputed signatures.

II. The evidence tending to show ratification is substantially as follows: On August 11, 1896, the defendant Samuel H. Butterbaugh wrote the plaintiff, "I have been disappointed in getting money to meet the interest on the Parmelia Giddings note which you hold," and promising an early remittance to pay interest. On August 19, 1898, he inclosed to plaintiff a draft for $40.90 "in payment of interest on the note you now hold of Mrs. Parmelia Giddings." He added: "I trust you will not annoy Mrs. Giddings concerning this note you hold against her, as you know there was considerable crookedness about obtaining this money on the part of Mr. Volney Giddings. Mrs. Giddings is very anxious this should be fixed up, and I think it will be in a little while." On September 2, 1896, he

wrote the plaintiff, saying that he had failed to procure money to pay the note, and promising payment in a short time. On August 11, 1896, plaintiff addressed a letter to Mrs. Giddings concerning payment of the $550 note, and in reply received a letter signed "C. S. Giddings," as follows: "Mrs. Parmelia Giddings requests me to reply to your favor of the 11th inst. in regard to payment of note of Volney Giddings by saying that at present she has no money with which to pay it, and that you should rely on the collateral which you hold; and, further, that she is sorry to be placed in a position by the acts of others where she cannot at once meet all obligations." There is no evidence, outside of the letter itself, that Mrs. Giddings ever authorized the writing of this reply. Mrs. Sherwood testifies: "I knew that she knew that that note was held by the Carthage National Bank as collateral security for another note that the bank had loaned money on. * * * I heard her say that she would pay the note as soon as she could sell other property, and could raise the money, and take up the collateral note. She knew that her name was in the note." The only other evidence bearing upon the ratification are declarations of Mrs. Giddings to the effect that she did not know that the notes had been given to the bank until the bank sent her notice, and that the notice was a great surprise to her. Conceding that the evidence as to the declarations of Mrs. Giddings is inadmissible, still we think the plaintiff has failed to prove ratification. It does appear that Mrs. Giddings had knowledge of this transaction between her son Volney and the bank as early as August 11, 1896, but there is no evidence of ratification except the statement said to have been made to Mrs. Sherwood that she would pay the note as soon as she could sell property; but surely this statement, even if made, was not such a ratification as should bind Mrs. Giddings by the signatures that she had neither made nor authorized. The case is not as strong in its facts as *Smith v. Tramel,* 68 Iowa, 488,

wherein it is held there was no ratification. The provisions in the will of Mrs. Giddings do not seem to us to affect the question one way or another, as the collaterals would come to her or her estate upon the payment of the $550; and to provide for a disposition thereof as she did does not indicate, that she had or had not written or authorized the signatures. Much of appellant's argument is addressed to the question as to the admissibility of the declarations of Mrs. Giddings, but these numerous questions we need not consider, as, in our opinion, with this evidence admitted, the plaintiff has failed to show that the disputed signatures were written by Mrs. Giddings or by her authority, or that she ever ratified the same. Thus viewing the case, we conclude that the judgment of the district court must be REVERSED.

PerCuriam.—The foregoing opinion was written by Mr. Justice Given before his retirement from the bench, in substantially the same form in which it now appears, and it is now adopted as expressing the views of the court as now constituted.

SHERWIN, J., taking no part.